**No. 23-1826**

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

COTTER CORP., N.S.L.,

*Plaintiff-Appellant*,

v.

UNITED STATES,

*Defendant-Appellee*.

Appeal from the United States Court of Federal Claims
in Case No. 1:22-cv-00414-DAT
(Hon. David A. Tapp, Judge)

---

# REPLY BRIEF FOR PLAINTIFF-APPELLANT

Alejandro L. Sarria
Principal Attorney
Jason N. Workmaster
Connor Farrell
MILLER & CHEVALIER CHARTERED
900 16th Street NW
Washington, DC 20006
Tel: (202) 626-5893
Fax: (202) 626-5801
asarria@milchev.com
jworkmaster@milchev.com
cfarrell@milchev.com

Jennifer Steeve
RILEY SAFER HOLMES
& CANCILA LLP
100 Spectrum Center Dr.,
Suite 650
Irvine, CA 92618
Tel: (949) 359-5515
Fax: (949) 359-5501
jsteeve@rshc-law.com

Attorneys for *Plaintiff-Appellant*
Cotter Corporation (N.S.L.)

January 19, 2024

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION...................................................................................................1

ARGUMENT .........................................................................................................3

I. Cotter Is Entitled to PAA Indemnity Because It Incurred Public Liability Arising out of or in Connection With Mallinckrodt's Contractual Activity for the United States. ........................................................................3

A. The Government Concedes the Facts Showing the Causal and Logical Connection Between Cotter's Alleged Public Liability and Mallinckrodt's Contractual Activity for the United States. .......................5

B. The PAA's Purposes and Legislative History Support Cotter's Plain Language Interpretation of Section 170(d). ...................................8

C. The Government and COFC Misunderstand and Misapply the PAA...........................................................................11

II. COFC Erred in Dismissing Cotter's Contractual Indemnity Count for Lack of Standing and Failure to State a Claim. ...............................................18

A. COFC Applied the Wrong Standard in Dismissing Cotter's Contractual Indemnity Count for Lack of Standing, and Cotter's Allegations Plainly Support a Cognizable Claim for Contractual Indemnity. ........................................................................................19

B. COFC Misinterpreted the Contract's Notice Provisions in Dismissing Cotter's Contractual Indemnity Count for Failure to State a Claim. ..........................................................................................22

CONCLUSION ....................................................................................................26

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abraham v. Rockwell Int'l Corp.*,
326 F.3d 1242 (Fed. Cir. 2003) ........ 24

*Azima v. RAK Inv., Auth.*,
926 F.3d 870 (D.C. Cir. 2019) ........ 4

*Bell/Heery v. United States*,
739 F.3d 1324 (Fed. Cir. 2014) ........ 22

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*,
467 U.S. 837 (1984) ........ 8

*Columbus Reg'l Hosp. v. United States*,
990 F.3d 1330 (Fed. Cir. 2021) ........ 19, 21

*Coregis Ins. Co. v. Am. Health Found., Inc.*,
241 F.3d 123 (2d Cir. 2001) (Sotomayor, J.) ........ 4

*Duke Power Co. v. Carolina Env't. Study Grp., Inc.*,
438 U.S. 59 (1978) ........ 9, 10

*John Wyteh & Bro. Ltd. v. CIGNA Int'l Corp.*,
119 F.3d 1070 (3d Cir. 1997) (Alito, J.) ........ 4

*Lockheed Martin IR Imaging Sys., Inc. v. West*,
108 F.3d 319 (Fed. Cir. 1997) ........ 25

*Maricich v. Spears*,
570 U.S. 48 (2013) ........ 8, 9

*N.Y. & Presbyterian Hosp. v. United States*,
881 F.3d 877 (Fed. Cir. 2018) ........ 9, 12, 18

*San Carlos Irrigation and Drainage Dist. v. United States*,
877 F.2d 957 (Fed. Cir. 1989) ........ 23

*Schneider Moving & Storage Co. v. Robbins*,
466 U.S. 364 (1984) ........ 25

*In re TMI Litig. Cases Consol. II*,
940 F.2d 832 (3d Cir. 1991) ........ 11

*Welkener v. Kirkwood Drug Store Co.*,
734 S.W.2d 233 (Mo. Ct. App. 1987) ........ 13

**Statutes**

42 U.S.C. § 2012 ........ 10

42 U.S.C. § 2014 ........ 6

Price-Anderson Act ........ *passim*

## INTRODUCTION

During World War II, the United States contracted to produce radioactive material for the Manhattan Project under a federal contract explicitly providing for Price-Anderson Act ("PAA") indemnity. Private plaintiffs sued the contractor, Mallinckrodt Chemical Works ("Mallinckrodt"), as well as Cotter Corporation (N.S.L.) ("Cotter"), asserting strict liability for the radioactive material in a PAA public liability action called *McClurg*. The PAA now requires the government to indemnify Mallinckrodt *and* Cotter for this "public liability arising out of or in connection with the contractual activity" that created the material for the United States. Appx817 (§ 170(d)).

In its response brief, the government concedes the critical facts showing that Cotter's public liability is "connected" to Mallinckrodt's contractual activity. This connection is two-fold: (1) the strict liability claims in *McClurg* arise from the radioactive material itself, which was the known and intended product of Mallinckrodt's contractual activity for the government; and (2) the *McClurg* public liability action demanded judgment against Mallinckrodt and Cotter, jointly and severally, for alleged damages resulting from the radioactive material. Those facts alone complete the indemnity analysis under the plain language of the PAA.

The government spends most of its brief arguing that an extratextual rule should be grafted onto the PAA requiring a "nexus" between Cotter's contractual "relationships" or "activities" and Mallinckrodt's contractual activity. *See, e.g.*, Gov. Br.

at 19–20. The Court should reject this proposal because such a requirement is not stated in the statute, and it would upend sound policy decisions Congress made long ago.

The government's new interpretation conflicts with the plain language of the PAA in two important ways. First, the word "nexus" appears nowhere in the Act. Instead, the PAA uses the broad terms "arising out of" *or* "in connection with" to require either a causal *or* merely logical connection between a claimant's public liability and the contractual activity. Appx817 (§ 170(d)). Second, the relevant "connection" is not between a claimant's "relationships" or "activities" and the contractual activity, but between the "public *liability*" (here, strict liability for radioactive material) and the contractual activity (here, the production of that very material). *Id.* (emphasis added).

In addition to the statutory text, the government's interpretation conflicts with the core purposes and history of the PAA. Congress designed the Act to provide a reliable backstop for public liability with a connection to federal nuclear activity. Congress did this both to protect the public and to encourage companies like Cotter to participate in the burgeoning American nuclear industry at a time when concerns about a nuclear incident and the resulting legal liability were at their zenith. Denying Cotter PAA indemnity for the public liability in *McClurg*, as the court did below, would defeat *both* statutory purposes because it would risk leaving injured Americans without a remedy in future nuclear incidents and because it would discourage nuclear energy companies like Cotter from possessing nuclear material that is produced for the federal government. This Court should correct those legal errors on *de novo* review.

## ARGUMENT

### I. Cotter Is Entitled to PAA Indemnity Because It Incurred Public Liability Arising out of or in Connection With Mallinckrodt's Contractual Activity for the United States.

This Court's analysis should begin and end with the plain language of PAA Section 170(d) and the defined statutory terms it incorporates:

> [T]he Commission is authorized . . . to enter into agreements of indemnification with its contractors for the construction or operation of production or utilization facilities or other *activities under contracts for the benefit of the United States involving activities under the risk of public liability* for a substantial nuclear incident. In such agreements of indemnification the Commission may require its contractor to provide and maintain financial protection of such a type and in such amounts as the Commission shall determine to be appropriate to cover *public liability arising out of or in connection with the contractual activity*, and *shall indemnify the persons indemnified against such claims* above the amount of the financial protection required, in the amount of $500,000,000 including the reasonable costs of investigating and settling claims and defending suits for damage in the aggregate for all persons indemnified in connection with such contract and for each nuclear incident.

Appx817, Appx1008–1009 (emphasis added).

Under a plain language reading of Section 170(d), the government must indemnify any person meeting the PAA's definition of "person indemnified" for "public liability arising out of or in connection with the contractual activity" on a federal contract that provides PAA indemnity. Appx816–817.

Here, Cotter clearly meets the definition of "person indemnified"—defined to include "*any* [] person who may be liable for public liability"—because Cotter may have been found liable for public liability in the *McClurg* "public liability action." Appx816

(§ 11(r)) (emphasis added), Appx1366 (¶ 71). The Court should reject the government's attempt to exclude Cotter from this broad definition based on Cotter's contractual relationships and activities. *See, e.g.*, Gov. Br. at 23, 25, 26.[1]

Further, the government does not dispute the ordinary meaning of the terms "arising out of" or "in connection with," which dictate that Cotter is entitled to PAA indemnity if its alleged public liability has a causal *or logical* connection to the contractual activity that produced the radioactive material. *See Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001) (Sotomayor, J.) ("The phrase 'arising out' of is usually interpreted as 'indicat[ing] a causal connection,'' whereas "in connection with" is "broader in scope than the term 'arising out of'"); *Azima v. RAK Inv., Auth.*, 926 F.3d 870, 877–78 (D.C. Cir. 2019) (holding that "'in connection with'" is the same as "related to," is "quite broad," and "sweeps more broadly than 'arising out of'" because it requires only "some 'logical or causal connection'" (quoting *Coregis Ins. Co.*, 241 F.3d at 128–29, and *John Wyteh & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.)); Appx12 (finding that "arising out of" and "in connection with" "evoke[] a tie or relationship between two things").

---

[1] As explained below, the PAA's 1962 amendments added an alternate definition of "person indemnified"—applicable only in *overseas* nuclear incidents—which does limit the indemnity based upon a claimant's contractual relationships and activities. Appx901 (§ 11(r)). That alternate definition does not apply here because *McClurg* involved *domestic* nuclear incidents. The addition of that alternate definition shows that Congress knew how to limit PAA indemnity based on contractual relationships and activities, but it intentionally chose not to adopt such a limitation for nuclear incidents occurring in the United States. *See* Appx910.

Finally, the government admits that it entered into a PAA indemnity agreement with Mallinckrodt that covered Mallinckrodt and "other persons indemnified," as provided in the Act. Appx780–781 (¶ 3.a).

Those concessions leave only one other question of statutory interpretation for this Court to decide: whether Cotter's alleged liability in *McClurg* is "public liability arising out of or in connection with the contractual activity" Mallinckrodt performed for the United States. Appx817 (§ 170(d)). The answer to that question must be "yes" because, in *McClurg*, the plaintiffs pleaded a PAA cause of action claiming that Mallinckrodt and Cotter were strictly, jointly, and severally liable for the very radioactive material that Mallinckrodt produced under its PAA-covered contract with the government. That is clearly sufficient to establish a causal connection, or *at minimum* a logical connection, between Cotter's alleged liability and Mallinckrodt's contractual activity. Cotter therefore stated a claim for PAA indemnity under the Act.

### A. The Government Concedes the Facts Showing the Causal and Logical Connection Between Cotter's Alleged Public Liability and Mallinckrodt's Contractual Activity for the United States.

As the government concedes, the United States engaged Mallinckrodt to produce enriched uranium and other radioactive material for the Manhattan Project under a federal contract providing PAA indemnity. Mallinckrodt then stored the material at a site known as "SLAPS," which is located between the St. Louis Airport and a waterway, Coldwater Creek. In sum, Mallinckrodt's contractual activity was to produce and store the radioactive material. Some of that material was later moved a few miles downstream

to a site known as "Latty Avenue," also abutting Coldwater Creek. Between 1969 and 1974, the government licensed Cotter to possess some of the same material at Latty Avenue, consistent with the PAA's purpose of encouraging private participation in the nuclear industry and the government's need to have the material stored.

In 2012, the *McClurg* plaintiffs brought a single PAA "public liability action" against Mallinckrodt and Cotter, alleging strict liability against Mallinckrodt for its possession of the material at SLAPS and against Cotter for its possession of the material at Latty Avenue. *See* 42 U.S.C. § 2014(hh); Appx1365–67 (¶¶ 70–75). The *McClurg* plaintiffs claimed that the radioactive material contaminated Coldwater Creek and sought to hold Mallinckrodt and Cotter *jointly and severally* liable for all asserted damage involving that material. *See* Appx1370.

Mallinckrodt and Cotter defended and settled *McClurg*, but the government declined to participate.[2] Cotter therefore brought this indemnity action as a "person indemnified" under the PAA and the PAA indemnity agreement incorporated into the Mallinckrodt-U.S. contract. In its complaint for indemnity, Cotter described the *McClurg* PAA claim and allegations showing that Mallinckrodt's contractual activity created the very radioactive material for which Cotter was alleged to be strictly, jointly,

[2] Because COFC dismissed at the pleading stage, Cotter has not taken discovery into whether the government indemnified Mallinckrodt for its public liability in *McClurg*. That is a critical factual inquiry because indemnifying Mallinckrodt would be further proof of the connection between the alleged liability in *McClurg* and the contract activity that gave rise to that liability.

and severally liable with Mallinckrodt. *See* Appx22. The *McClurg* claim and allegations alone are sufficient to establish the connection required under Section 170(d) because Cotter's alleged strict liability and Mallinckrodt's contractual activity are both inextricably bound by the *same radioactive material*, the *same series of nuclear incidents*, and the *same alleged damage to the public*.

That liability-contract connection is even stronger when considered in the context of how Mallinckrodt's and Cotter's alleged liability arose. The uncontested facts show that: (1) Mallinckrodt's contractual activity produced the radioactive material for the United States; (2) in 1960, shortly after the PAA's enactment, the United States began marketing the legacy material for sale to companies that would possess the material under the licensing and regulatory authority of the Atomic Energy Commission ("AEC"); (3) in that same timeframe, the government executed a PAA indemnity agreement with Mallinckrodt that expressly survived the contract's completion and included protection for "other persons indemnified" for public liability "that involves" the "material" produced under the contract; (4) Cotter began acquiring the legacy material and the government approved, licensed, and regulated Cotter's possession of the material; and (5) ultimately, Cotter's possession of that very material, under its AEC license, exposed it to public liability under the PAA—i.e., alleged strict, joint, and several liability with Mallinckrodt. *See* Op. Br. at 23–24; *see also* Appx26–27 (Compl. ¶¶ 16–20) (marketing), Appx781–783 (¶¶ 3.b(i)-(ii)(4), 6), Appx1365–1367 (¶¶ 70–75).

Collectively, those facts further cement the connection between Cotter's alleged public liability and Mallinckrodt's contractual activity: Mallinckrodt created the material for the government. The government then placed that material into a domestic chain of distribution, together with the risk of a domestic nuclear incident and the very type of public liability the PAA was written to address. Without those activities, the nuclear incident that led to *McClurg* would not have occurred and the public liability claims against Mallinckrodt and Cotter would never have been filed. That predictable sequence of events plainly satisfies the causal or logical "connection" required by the plain language of PAA Section 170(d). The statutory analysis should end there because a court "must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 843 (1984).

**B. The PAA's Purposes and Legislative History Support Cotter's Plain Language Interpretation of Section 170(d).**

If the Court concludes that the language of Section 170(d) harbors any ambiguities, then it should examine the PAA's purposes and legislative history to confirm Cotter's claim for PAA indemnity.[3]

[3] The government criticizes Cotter for citing legislative history. Gov. Br. at 45. But the government at once rejects and invokes legislative history as it sees fit. *Compare id.* at 44, 48, *with id.* at 46, *and id.* at 47 n.14. The government cannot have it both ways. As the government recognizes elsewhere, Section 170(d) "must be interpreted in a way that is consistent with the statutory framework and design." Gov. Br. at 42 (citing *Maricich v. Spears*, 570 U.S. 48 (2013)). Moreover, "[i]f a statute requires interpretation beyond the terms of the language, [the Court] can use its legislative history to inform the statutory interpretation—analysis of legislative history is also a 'traditional tool of

The "primary" purpose of the PAA is "to protect the public" in domestic nuclear incidents. Appx910, Appx816–819. The plain meaning of "arising out of or in connection with" furthers that purpose because it ensures that public funds are made available to compensate Americans injured in a nuclear incident regardless of the identity or activities of the defendant(s), so long as the essential elements of the statute are met. The government balks at the idea that indemnity might extend to a "downstream purchaser" of the Manhattan Project material, but any concerns about such "profound and far-reaching consequences" are the result of "the congressional judgment"—to which this Court defers—to "provid[e] the public compensation in the event of a catastrophic nuclear incident." *Duke Power Co. v. Carolina Env't. Study Grp., Inc.*, 438 U.S. 59, 83–84 (1978). Indeed, the far-reaching nature of PAA indemnity was just as foreseeable to Congress in 1957 as the potential for far-reaching public liability resulting from hazardous radioactive material. *See, e.g.,* Appx880.

The PAA's broad coverage also makes sense given that the second core purpose of the Act is to encourage private entities like Cotter to participate in the nuclear energy industry. Appx816–819. When Cotter began purchasing the material in 1967, Cotter could reasonably rely on the PAA indemnity provisions that Congress had adopted years earlier. The government's interpretation of Section 170(d), which imposes limitations not present in the statute's text, would introduce great uncertainty

statutory construction.'" *Maricich*, 570 U.S. at 60; *see also N.Y. & Presbyterian Hosp. v. United States*, 881 F.3d 877, 887 (Fed. Cir. 2018).

for companies like Cotter and eviscerate the PAA's goal "to remove the economic impediments" of participating in the domestic nuclear energy industry. *Duke Power*, 438 U.S. at 83–84.[4]

In contrast, the history and settled understanding of the PAA support Cotter's interpretation. For example, on the question of whether Section 170(d) limits indemnity to persons based on their contractual relationship or activities, Congress has specifically recognized that PAA indemnity "*applies to strangers*" and "would apply in the case of every nuclear incident and would protect each and every person who might have liability *regardless of that person's relationship* with [an indemnified contractor]." Appx1160 (emphasis added). Congress has also observed that "the 1957 [PAA] provided that any person who might be held liable for public liability resulting from a nuclear incident, including not only the party directly engaged in the activity that results in the nuclear incident *but any other person as well*, was to be indemnified under the [PAA] system—the so-called 'channeling of liability' or 'omnibus coverage' provisions of the [PAA]." Appx1185 (emphasis added).

---

[4] Cotter does not advocate governmental indemnity for public liability involving all nuclear material. The PAA reaches only source material, special nuclear, and byproduct material, as defined by Congress and the AEC/NRC. *See* 42 U.S.C. § 2012(i). Cotter was licensed to possess and use the subject nuclear material as "source material." In line with the PAA, Cotter seeks indemnity for only the narrow subset of material Congress chose to cover in the PAA—of which the Manhattan Project nuclear material is clearly a subset, if not *the* material Congress first envisioned when enacting it. Other nuclear material cannot give rise to either PAA liability or PAA indemnity. *See* Appx816 (§ 11(o) (defining "nuclear incident")). The PAA also has other limiting principles, including the exceptions to the definition of "public liability." *See id.* (§ 11(u)).

Similarly, in its 1999 Report to Congress, the Department of Energy ("DOE")—the agency now tasked with administering the PAA along with the Nuclear Regulatory Commission ("NRC")—explained that, through the Act's "economic channeling" function, the indemnity extends "to *any person* that may be legally liable for a nuclear incident, *regardless of whether they have any contractual or other relationship with DOE*." Appx1229 (emphasis added). DOE also noted that the PAA's "omnibus coverage" provides indemnity to even purely commercial entities, like Cotter, when a nuclear incident results from "nuclear material that is a *legacy from prior contractual activity* conducted for DOE." Appx1236 (emphasis added). In other words, under the PAA, "any entity exposed to potential liability for activity resulting in a nuclear incident, even if it were not a direct participant in the activity, was entitled to indemnification." *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 852 (3d Cir. 1991).

Viewed in light of the plain statutory text, there can be no doubt that the purposes, legislative history, and settled understanding of the PAA support Cotter's interpretation of Section 170(d), not the government's interpretation.

### C. The Government and COFC Misunderstand and Misapply the PAA.

The government makes four additional arguments against Cotter's plain language interpretation of Section 170(d), but each fails.

**Contractual Nexus.** The government advances an extratextual requirement under which Cotter must show "*some* nexus" to Mallinckrodt's contract. Gov. Br. at 19 (emphasis original), 22; *see also id.* at 20, 26, 30–31 n.8. According to the government,

that purported nexus requirement is not met here because (1) Cotter did not have a "contractual relationship" with either the United States or Mallinckrodt; (2) Cotter did not perform "activities for the government's benefit" under Mallinckrodt's contract; and (3) Cotter "came into possession of" the radioactive material pursuant to a commercial agreement with a third party. *See id.* at 2, 19–20, 22, 23, 30–31 n.8, 33–34; *see also* Appx13 (COFC relying on Cotter's lack of privity).

The Court should reject this line of argument. Cotter's contractual relationships or activities do not govern its *domestic* PAA claim for indemnity. In the Act's 1962 amendments, Congress expressly conditioned PAA indemnity on having a contractual relationship with, or conducting contractual activities for, the government or an indemnified prime contractor in *overseas* nuclear incidents—but *not* for domestic nuclear incidents like those in *McClurg*. *See* Appx901 (§ 11(r)), Appx910. This Court should not dismiss that critical textual distinction because "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *N.Y. & Presbyterian. Hosp.*, 881 F.3d at 886–87 (citation omitted).

The PAA's distinction between domestic and international incidents is essential to fulfilling the purposes of the Act. From its inception, the PAA's domestic "coverage was intentionally broad" given its primary objective of protecting the public, and so Congress had "no reason to restrict coverage to those situations in which

contractors . . . of the [AEC] were the parties determined to be liable." Appx901–910. However, that public purpose did "*not* underlie the extension of [PAA] indemnity" to nuclear incidents abroad, which Congress designed only "to protect AEC contractors and subcontractors." Appx910 (emphasis added). Thus, indemnity for overseas incidents *does* require liability resulting from "*activities under* a subcontract, purchase order, or other agreement of any tier under the basic contract." *Id.* (emphasis added). But that requirement is inapplicable to Cotter's domestic indemnity claim here.

Moreover, where strict liability is alleged (as it was in *McClurg*), parties in the chain of distribution of radioactive material are purported to be subject to liability regardless of their contractual relationships, activities, or how they came to possess the material. *See, e.g., Welkener v. Kirkwood Drug Store Co.*, 734 S.W.2d 233, 241 (Mo. Ct. App. 1987). Thus, as explained above, the claimed strict liability in *McClurg* connects Cotter's alleged liability to Mallinckrodt's activities and clearly establishes at least "*some* nexus" to the Mallinckrodt-U.S. contract, even under the government's restrictive reading of Section 170(d). *See* Gov. Br. at 19 (emphasis in original).

**Private Sales**. The government also claims Cotter cannot show that its alleged liability is causally or logically connected to the work on Mallinckrodt's contract because Cotter came into possession of the material through private sales. That argument is based primarily on three flawed premises and should be rejected.

*First*, the unbroken chain of title to the material, from the government to a third party to Cotter, does not sever the causal and logical connection between Cotter's

alleged strict liability and the contractual activity that created the material; it underscores it, for the reasons already explained. Furthermore, the PAA does not condition the indemnity based on who possesses or holds title to the radioactive material involved in a domestic nuclear incident, much less how one comes "into possession" of such material. *See, e.g.*, Gov. Br. at 19–20, 33, 39. Thus, contrary to the government's arguments, COFC should not have even considered those factors in this case because, in redefining the term "nuclear incident," the Act's 1975 amendments *did* limit PAA indemnity based on ownership and possession of the material—but again only for incidents *outside* the United States. *See* Appx1178 (§ 11(q)).[5]

*Second*, the extra-statutory terms of the sales agreements are immaterial to Cotter's claim for *statutory* indemnity because the language of the *PAA* is dispositive of that claim. Op. Br. at 37–39. Indeed, as COFC acknowledged, the United States could not waive its statutory obligations by contract. Appx14. In particular, the "as is" clause in the Bill of Sale, at most, speaks to the safety of the material itself, not to whether or to whom the government would owe indemnity following a nuclear incident. The fact that

[5] Similarly, the government cannot cure COFC's clear factual errors with respect to the end date of Mallinckrodt's contract and the date Cotter first acquired some of the radioactive material. Gov. Br. at 38-39. More fundamentally, however, the government ignores the reason why those factual errors are significant: the PAA does not limit indemnity based on when a contract ends, when a claimant comes into possession of nuclear material, or even when a nuclear incident occurs. Op. Br. at 34–36. And the implementing indemnity agreement expressly survives "the completion, termination or expiration of [the] contract." Appx783 (¶ 6). Thus, COFC had no reason to consider those dates as even potentially disqualifying of Cotter's indemnity rights.

the now-insolvent Continental assumed "full responsibility" for the material is also irrelevant under the PAA, which, again, did not premise the government's indemnity obligations on possession or title to radioactive material until 1975—when it did so only for nuclear incidents abroad. Op. Br. at 20, 36–37.[6]

*Third*, the government proves nothing when it notes that the AEC did not indemnify Cotter in its license issued under PAA Section 170(a). As DOE has acknowledged, if "the AEC [now NRC] decided not to provide for Price-Anderson coverage in [a] license, the *DOE Price-Anderson indemnity* would apply to the incident." Appx1205 (emphasis added). DOE's acknowledgement of this point is consistent with the plain language not only of the PAA, but also the Mallinckrodt-U.S. indemnity agreement. Appx783 (¶ 5) (emphasis added).

**Financial Protection.** Contrary to the thrust of the government's argument, nothing in Section 170(d) makes financial protection a prerequisite for indemnity. Section 170(d) provides that the government can require "*its contractor* to provide and maintain financial protection." Appx817 (emphasis added). That is, the government "*may*" choose to require financial protection from its contractor, but it "*shall*" indemnify all covered persons indemnified, *id.* (emphasis added), irrespective of whether those

---

[6] The government's independent obligation to indemnify Cotter is also unaffected even if Commercial Discount (or any other entity) may have agreed to indemnify Cotter against certain third-party claims involving the material. In any event, any third-party indemnity is an issue that goes to the merits of Cotter's PAA claim and should not be addressed or resolved in this appeal.

persons are themselves "subject to the AEA's right to require . . . financial protection *ex ante*," Gov. Br. at 29. In contrast, PAA Section 170(a), which is not at issue here, does condition indemnity on financial protection. This shows that Congress did not intend to do the same under Section 170(d). *See* Appx816–817 (§ 170(a)).

**PAA Indemnity Examples.** Finally, the government attempts to distinguish the examples of indemnified nuclear incidents cited in Cotter's opening brief—involving an airplane crash and DOE legacy nuclear material—but falters doing so. Op. Br. at 5, 25, 42. According to the government, the claimants in those examples did have a nexus to contractual activity, but Cotter does not here. Gov. Br. at 45–46, 49–50. The government only reaches this conclusion, however, by applying a different rationale to Cotter and selectively ignoring key facts.

As to the first example, the indemnified airplane company fails every test the government seeks to impose on Cotter: (1) the aircraft company had no contractual relationship with the reactor's operator, and (2) the company's activities—negligent aircraft maintenance—did not take place at the site of the incident, had nothing to do with the reactor's activity, were not in furtherance of a PAA-covered contract, and were undertaken for its own commercial purposes. Yet, according to the government, the aircraft company enjoys PAA indemnity because the nuclear incident in that example occurred at the site of "ongoing nuclear power generation." Gov. Br. at 45.

This is another distraction because, for *domestic* nuclear incidents like the one in *McClurg*, the PAA requires only that the incident occur "within the United States," and

it does not limit the indemnity to those incidents that occur during ongoing contract performance. Appx816 (§ 11(o)). Conversely, the PAA's 1962 amendments provided indemnity in *overseas* nuclear incidents only if the occurrence involved "*a facility* or device" that was "owned by, and *used by* or under contract with, the United States." Appx901 (§ 11(o)) (emphasis added). Thus, in attempting to distinguish the airplane example, the government is again asking this Court to improperly graft the PAA's overseas provisions onto Cotter's *domestic* indemnity claim.

Similarly, the government tries to dismiss the example involving DOE legacy nuclear material on the basis that the nuclear incident resulted from "material DOE still possessed and that was located on DOE property." Gov. Br. at 49 (emphasis omitted). However, those clearly were not the dispositive factors that led to indemnity in the DOE example; rather, it was the fact that the nuclear material involved in the incident was a "*legacy from prior contractual activity conducted for DOE*." Appx1236 (emphasis added). And, as to that dispositive factor, DOE was clear: the commercial entity involved in the nuclear incident was "included within the omnibus coverage of the DOE indemnification *that related to the contractual activity that resulted in the legacy material*." Appx1236 (emphasis added). The result should be the same in this case.

* * * * *

At bottom, the government seeks to rewrite the statutory text of Section 170(d) by attempting to force conditions on Cotter that Congress did not. That section means what it says: the AEC had the power to execute PAA indemnity agreements if it thought

that the work on a federal contract would create the risk for a nuclear incident. Here, the government entered into such an indemnity agreement specifically because the Mallinckrodt-U.S. contract introduced the risk of a nuclear incident by creating radioactive material that would have to be stored in America.

But while Congress used such government contracts as a vehicle for implementing the PAA, it also chose to extend *PAA indemnity protections* to a much broader class of entities outside of the government contracting sphere. That choice is reflected in the broad language Congress included throughout the PAA and it accomplishes *both* of the Act's stated purposes by providing a federal safety net for private citizens and other private entities (like Mallinckrodt and Cotter) who are impacted by a nuclear incident involving legacy nuclear material. *See* Appx816–817, Appx880, Appx910, Appx1160, Appx1185. Congress's considered preference on those questions should be given deference, and this Court should "presume that the legislature says in a statute what it means and means in a statute what it says there." *N.Y. & Presbyterian Hosp.*, 881 F.3d at 885.

## II. COFC Erred in Dismissing Cotter's Contractual Indemnity Count for Lack of Standing and Failure to State a Claim.

Because Cotter stated a claim for indemnity under the PAA, Cotter also stated a viable contractual indemnity claim because Cotter's statutory rights flow through the Mallinckrodt-U.S. contract.

Regardless, the Court should reverse the dismissal of Cotter's contract claim on standing grounds for the additional reason that COFC applied the wrong legal standard. Under the correct standard, Cotter's contract-based allegations are sufficient to establish subject-matter jurisdiction. Op. Br. at 42–46. The COFC also erred in dismissing the contractual count for failure to state a claim. Unlike the government, Cotter interprets the Mallinckrodt-U.S. indemnity agreement to harmonize and give full effect to each of its key terms. The Court should decline the government's invitation to impose on Cotter an administrative "claims" procedure that the contract does not.

### A. COFC Applied the Wrong Standard in Dismissing Cotter's Contractual Indemnity Count for Lack of Standing, and Cotter's Allegations Plainly Support a Cognizable Claim for Contractual Indemnity.

Standing is a threshold jurisdictional issue separate "from the issue of whether a complainant's allegations state a viable claim for relief." *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1341 (Fed. Cir. 2021) (citations omitted). "As a general rule [for jurisdiction], if a plaintiff alleges breach of a contract with the government, the allegation itself confers power on the Claims Court to decide whether the claim has merit," provided the allegation is not "frivolous, wholly insubstantial, or made solely for the purpose of obtaining jurisdiction." *See id.*

COFC erred because it did not apply that standard in dismissing Cotter's contractual indemnity count for lack of standing. Instead, COFC disposed of that count on the merits, ruling that Cotter is not an intended third-party beneficiary of the

Mallinckrodt-U.S. indemnity agreement because it "does not fall within the class 'clearly intended to be benefited' by the PAA's indemnification under Section 170(d)." Appx16.

The government contends that COFC's ruling should stand because it was "rendered as a matter of law based upon the terms of the Mallinckrodt Contract alone." Gov. Br. at 55. That contention is not correct. Even a cursory review of COFC's judgment shows that the court was persuaded that the government had in fact "disavow[ed]" any indemnity obligation to Cotter by selling off the radioactive material. Appx16. COFC reached that erroneous result by looking to various "sale chain of title and licensing documents," which are neither incorporated nor referenced anywhere in Mallinckrodt's contract. Gov. Br. at 55 n.18, 40–41; Appx14, Appx16. This shows that COFC dismissed Cotter's claim on the merits, based on *the government's* extrinsic factual assertions and documents, not as a matter of law and not on "the terms of the Mallinckrodt contract alone." Gov. Br. at 55. That was the wrong standard.

Applying the correct standard, Cotter's contract allegations *are clearly not* "frivolous, wholly insubstantial, or made solely for the purpose of obtaining jurisdiction." *Id.* Here, the government had a contractual duty to defend or indemnify Cotter as an intended third-party beneficiary of the indemnity agreement because Cotter meets the statutory definition of "person indemnified" incorporated in that agreement and because it incurred "public liability" in *McClurg* that: (1) has a causal and logical connection to Mallinckrodt's contractual activity for the government; and (2) resulted from a nuclear incident involving radioactive material produced and delivered under

Mallinckrodt's contract. Appx9–21, Appx22–24, Appx25–30 (¶¶ 12–24, 28–29, 34–43), Appx34 (¶¶ 5, 7–8, 10, 25–35, 55–57), Appx35–36 (¶¶ 36, 42–43, 58, 72). The government breached that duty because it neither defended nor indemnified Cotter in *McClurg*, as required by the indemnity agreement. Appx28–20 (¶¶ 31–32), Appx33 (¶ 47), Appx1372–1378.

Those allegations are sufficient to support a non-frivolous claim that Cotter falls within the identified class of "persons indemnified" who were clearly intended to directly benefit under the statutory terms incorporated in the indemnity agreement. *See* Appx781–782, Appx786–787. And, as in *Columbus Regional Hospital*, which the government does not address, Cotter's allegations are also sufficient to state a cognizable claim for contractual indemnity. *See* 990 F.3d at 1342, 1345–46. Therefore, COFC should not have dismissed Cotter's contractual indemnity count for lack of standing *or* on the merits.

The government insists that Cotter lacked standing because its allegations supposedly ignore subparagraph 3(b)(i) of the indemnity agreement, which requires "public liability . . . aris[ing] out of or in connection with the contractual activity." Gov. Br. at 53–54 (emphasis omitted). According to the government, Cotter focuses only on showing, under subparagraph 3(b)(ii)(4), that its "public liability . . . arises out of or results from a nuclear incident" involving radioactive material "produced or delivered" under the Mallinckrodt-U.S. contract. *Id.* at 54.

The government misstates Cotter's position. It is also wrong about the plain meaning of the indemnity agreement. As explained above, Cotter's complaint alleged facts showing that its alleged liability for the radioactive material in *McClurg* is inextricably linked to the contractual activity that produced that material under the Mallinckrodt-U.S. contract. Those factual allegations are sufficient to state a claim under subparagraph 3(b)(i) of the indemnity agreement. Appx781–782.

Further, Cotter's interpretation does not render subparagraph 3(b)(i) superfluous just because Cotter's alleged strict liability for the material "produced and delivered" under the Mallinckrodt-U.S. contract satisfies *both* subparagraph 3(b)(i) ("public liability . . . arising out of or in connection with the contractual activities") *and* subparagraph 3(b)(ii)(4) (public liability . . . involving radioactive material "produced or delivered" under the contract). To the contrary, Cotter's interpretation and facts align with the plain language and structure of paragraph 3(b), which contains both a general category in subparagraph 3(b)(i), and four specific subcategories in subparagraph 3(b)(ii), of covered public liability. *Id.*

### B. COFC Misinterpreted the Contract's Notice Provisions in Dismissing Cotter's Contractual Indemnity Count for Failure to State a Claim.

Cotter also sufficiently alleged that the United States had notice of the facts entitling Cotter to contractual indemnity and that the government breached its obligations to defend or indemnify Cotter in *McClurg*. Appx28–30 (¶¶ 28–29, 31–34), Appx33 (¶¶ 46–47), Appx1374–1375. *See Bell/Heery v. United States*, 739 F.3d 1324, 1330

(Fed. Cir. 2014); *San Carlos Irrigation and Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989).

The government does not dispute that it had notice of the *McClurg* public liability claims against Mallinckrodt and Cotter, or of the United States' role as "a possible indemnitor in th[e] case," prior to settlement. Appx1372, Appx1374–1378. Nor does the government contend that it met its affirmative contractual duty in *McClurg* to indemnify and "collaborate with [Mallinckrodt] *and any other persons indemnified* in the settlement or defense of *any* claim" that the government "*may be* required to indemnify." Appx782–783 (¶ 4.a) (emphasis added). Instead, the government argues that having "notice" of *McClurg* and its status as a possible indemnitor was insufficient to trigger its obligations under the indemnity agreement, and that Cotter had to file a *claim* for indemnity with the government prior to this suit. Gov. Br. at 56–58.

Yet again, the government tries to impose nonexistent requirements on Cotter. A plain reading of the contract provides four reasons why Cotter was not required to submit a pre-suit *claim* for indemnity to the government.

*First*, Cotter's rights under the indemnity agreement are "not [] limited in any way by, and shall be interpreted without reference to," the administrative procedures of the contract's "Disputes" clause. Appx783 (¶ 8). Therefore, Cotter had no obligation under that clause (or any other clause) to submit a claim or to obtain a contracting officer's "decision" on a claim before filing this suit. Appx724.

*Second*, while the contract's "Litigation and Claims" clause does apply to claims made under the indemnity agreement, Appx783 (¶ 4.b), that clause only requires "*notice*" to the government of "claim[s] *against* [Mallinckrodt]" *for* public liability. Appx711–712 (emphasis added). It does not require the submission of pre-suit *claims* by "other persons indemnified," like Cotter, *against* the government *for* indemnity. There is no dispute that the government in fact had notice of the public liability claims against both Mallinckrodt and Cotter. Appx1372–1378. Thus, the notice requirement of the Litigation and Claims clause is met here. That notice triggered the government's affirmative duty to defend or indemnify Cotter under the plain language of the agreement, but the government failed to meet that duty. *See* Appx29–30 (¶¶ 31–32), Appx782–783 (¶ 4.a).

*Third*, even if the Mallinckrodt-U.S. contract did require Cotter to submit its own pre-suit claim or notice, the government's indemnity obligations are "*not [] affected by any failure* [by Cotter] to fulfill *any of its obligations*" arising from the contract. Appx783 (¶ 6) (emphasis added). In other words, any failure by Cotter to submit a claim or provide notice is excused, but the government's obligations remain. The government's reading of the indemnity agreement, adopted by COFC, ascribes no meaning to that provision or any other of the foregoing provisions. It thus violates the "general rule of contract interpretation that terms of a contract should not be interpreted so as to render them ineffective or superfluous." *Abraham v. Rockwell Int'l Corp.*, 326 F.3d 1242, 1254

(Fed. Cir. 2003) (citing *Lockheed Martin IR Imaging Sys., Inc. v. West*, 108 F.3d 319, 322 (Fed. Cir. 1997)).

*Fourth*, the government mistakenly asks this Court to apply the "general rule" "that the promisor [in a contract] may assert against [a third-party] beneficiary any defense that he could assert against the promise [sic] if the promisee were suing on the contract." Gov. Br. at 59 (quoting *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 370 (1984)). But, as *Schneider* explained, this "general rule" is "merely a rule of construction useful in determining contractual intent" and "should *not be applied* so inflexibly as to defeat the intention of the parties." 466 U.S. at 370–71 (emphasis added). Rather, courts must look to "*the language of the contract*" to determine if the contracting parties intended to condition a third-party beneficiary's "right to seek judicial enforcement" of the contract on its "exhaustion" of any administrative procedures included in the contract. *Id.* at 371 (emphasis added).

As explained above, the Mallinckrodt-U.S. indemnity agreement requires pre-suit notice only from Mallinckrodt and, in any event, the agreement guarantees a right to government indemnity even if such notice is not provided. Appx783 (¶ 6). The government cannot identify any contractual language reflecting an intention to condition the rights of "other persons indemnified" based on whether they submitted an indemnity *claim* before filing suit. Appx780–787. Therefore, this Court should "not infer" that the United States and Mallinckrodt intended to impose such a requirement on Cotter. *Schneider*, 466 U.S. at 373–74.

## CONCLUSION

For these reasons, Cotter requests that this Court reverse the decision of the Court of Federal Claims and remand for further proceedings.

January 19, 2024

Respectfully submitted,

**MILLER & CHEVALIER CHARTERED**

*/s/ Alejandro L. Sarria*
MILLER & CHEVALIER CHARTERED
Alejandro L. Sarria
Principal Attorney
Jason N. Workmaster
Connor Farrell
900 16th Street NW
Washington, DC 20006
Tel: (202) 626-5893
Fax: (202) 626-5801
asarria@milchev.com
jworkmaster@milchev.com
cfarrell@milchev.com

Jennifer Steeve
RILEY SAFER HOLMES & CANCILA LLP
100 Spectrum Center Dr., Suite 650
Irvine, CA 92618
Tel: (949) 359-5515
Fax: (949) 359-5501
jsteeve@rshc-law.com

Attorneys for *Plaintiff-Appellant*
Cotter Corp. (N.S.L.)

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the typeface requirements of Fed. R. of App. P. 32(a)(5) and the type-style requirements of Fed. R. of App. P. 32(a)(6). This document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font Garamond type style. According to that word processing system, this document contains 6,600 words, excluding the parts of the brief exempted by Fed. R. of App. P. 32(f) and Fed. Cir. R. 32(b).

/s/ Alejandro L. Sarria
Alejandro L. Sarria